IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,            ) | |
| ) | |
| Plaintiff,        ) | |
| ) | |
| v.             ) | Case No. 17-cr-30056 |
| ) | |
| Anthony Long,                           ) | |
| ) | |
| Defendant.    ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Anthony Long's second pro se compassionate release motion (d/e 42), requesting compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, Defendant's Motion (d/e 42) is GRANTED.

## I. BACKGROUND

On November 13, 2017, Defendant pled guilty to distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). See Minute Entry, November 13, 2017; d/e 1. On March 21, 2018, Defendant was sentenced to 90 months' imprisonment, to be followed by a 6-year term of supervised release. See Minute Entry, March 21, 2018. Defendant is currently serving his sentence at FCI Terre Haute, and

his projected release date is September 2, 2022.

On September 29, 2020, Defendant filed a pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). See d/e 31. On October 5, 2020, following the appointment of the Federal Public Defender's Office to represent Defendant, an Amended Motion for Compassionate Release was filed. See d/e 33. Then, on October 22, 2020, Defendant filed an Emergency Motion to Expedite Ruling on Compassionate Release. See d/e 37. In each of these motions, Defendant sought a sentence reduction based on his severe asthma and related respiratory issues and the COVID-19 pandemic.

On October 9, 2020, the U.S. Probation Office filed a memorandum discussing Defendant Long's proposed release plan and finding it unsuitable. See d/e 36. Defendant subsequently proposed an alternative release plan, and the U.S. Probation Office filed a second memorandum on November 19, 2020, stating that Defendant's alternative release plan was suitable. See d/e 41.

On October 27, 2020, the Government filed a response opposing Defendant's motion. See d/e 40. The Government argued that Defendant had not satisfied § 3582(c)(1)(A)'s exhaustion

requirement. The Government also argued, and continues to argue, that Defendant Long has not demonstrated the existence of extraordinary and compelling reasons for compassionate release and that the sentencing factors set forth in 18 U.S.C. § 3553(a) militate against compassionate release in this case. See d/e 40, pp. 11–13.

On December 2, 2020, this Court denied Defendant's compassionate release motions without reaching the merits because he had not adequately exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A). See Text Order, December 2, 2020. On December 14, 2020, Defendant filed a second pro se compassionate release motion, informing the Court that he had submitted a compassionate release request to his warden on December 7, 2020. See d/e 42. As more than 30 days have passed since Defendant filed his request, the Court holds that Defendant has exhausted his administrative remedies and will consider the merits of Defendant's compassionate release motions for the first time.

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from

modifying a term of imprisonment once it has been imposed. See 18 U.S.C. § 3582(c). However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A). See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194. Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief. With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting 30 days from when the inmate's request was received by the BOP, whichever is earlier. The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the

> term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Now that Defendant Long has exhausted his administrative remedies, the Court must consider whether "extraordinary and compelling reasons warrant" compassionate release. Having considered the relevant factors set forth in 18 U.S.C. § 3553(a), the Court concludes that Defendant has established that extraordinary and compelling reasons warrant a reduction in his term of imprisonment.

The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons. Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation. Social distancing can be difficult for

individuals living or working in a prison.  In addition, Defendant Long suffers from chronic asthma, and was hospitalized for asthma-related respiratory failure in May, 2020, and again in October, 2020.  See d/e 35, p. 10; d/e 37, p.2.  Guidance from the Centers for Disease Control ("CDC") indicates that moderate-to-severe asthma "might" put a person at an increased risk of serious illness from COVID-19.  See People with Certain Medical Conditions, CDC, https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#asthma (last accessed January 13, 2021).  Defendant Long is currently 37 years old.  See d/e 19, p. 11.

Several district courts have found during the course of the COVID-19 pandemic that well-controlled or mild asthma alone does not constitute an "extraordinary and compelling reason" for the compassionate release of a relatively young and otherwise healthy defendant.  See United States v. Forrest, No. 10-CR-741-4, 2020 WL 5110473, at *2 (N.D. Ill. Aug. 31, 2020); United States v. Council, 2020 WL 3097461, at *6 (N.D. Ind., June 11, 2020); United States v. Porter, 2020 WL 2509105, at *3 (C.D. Ill. May 15, 2020); United States v. Adeyemi, 2020 WL 3642478, at *16 (E.D. Pa. July 6,

2020). Defendant Long, however, does not suffer from "well-controlled" or "mild" asthma; as noted above, his asthma has caused him to be hospitalized for respiratory failure twice in the last year. Respiratory failure, as too many American families learned in recent months, is one way in which COVID-19 can kill its victims. See What Coronavirus Does to the Lungs, Johns Hopkins, https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/what-coronavirus-does-to-the-lungs (last accessed January 14, 2021). Because of the unique threat posed to individuals with severe pulmonary illnesses by an infection that "attacks the lungs," several district courts have held in recent months that severe respiratory illnesses in defendants of roughly the same age as Defendant Long present extraordinary and compelling reasons for compassionate release. See United States v. Collins, No. 10-CR-00963-1, 2020 WL 3892985, at *4 (N.D. Ill. July 10, 2020) (collecting cases, and granting compassionate release to 38-year-old defendant with poorly-controlled pulmonary issues including asthma); United States v. Fields, No. 2:05-CR-20014-02, 2020 WL 3129056, at *3 (W.D. La. June 11, 2020) (granting compassionate release to 37-year-old Defendant with severe

pulmonary illness).

There is an additional factor complicating the "extraordinary and compelling reasons" analysis in this case—namely, the fact that Defendant Long has already been infected once with COVID-19. On November 11, 2020, after Probation had found that Defendant Long's initial proposed release plan was found to be unsuitable by the U.S. Probation Office and before Defendant had proposed a second, suitable release plan, Defendant experienced symptoms including shortness of breath and thereafter tested positive for COVID-19.

According to the CDC, reinfection of individuals who have previously been infected with COVID-19 is possible, although antibodies from the initial infection may provide some measure of protection for a limited time. See Reinfection, CDC, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last accessed January 13, 2021). The CDC also advises that scientific studies to determine the incidence, severity, and timing of COVID-19 reinfection are ongoing, and that the agency is still "actively working to learn more about reinfection to inform public health action." Id. Some studies have indicated

that an individual who has once been infected with COVID-19 is less likely to be infected again than a person who has never been infected, but the extent and duration of this protection remain uncertain.  See COVID Reinfections Are Unusual—But Could Still Help the Virus to Spread, Nature, https://www.nature.com/articles/d41586-021-00071-6 (last accessed January 14, 2021) (reporting results of as yet non-peer-reviewed study showing that "immune responses from past infection reduce the risk of catching the virus again by 83% for at least 5 months"); see also United States v. Babbitt, ___ F. Supp. 3d ___, 2020 WL 6153608, at *8 (E.D. Pa. Oct. 21, 2020) ("A study in Spain revealed that only five percent of more than 60,000 people tested had antibodies, despite COVID-19's prevalence in the country. Several countries, including Hong Kong, Belgium, the Netherlands and the United States, have confirmed cases of re-infection. In some cases, the second infection was more serious than the first.").  As Judge McDade recently observed, "[i]ndividuals in the custody of BOP are not guinea pigs to test" an unproven hypothesis.  See United States v. Budd, No. 07-CR-40026, at *6–7 (C.D. Ill., Jan. 11, 2021) (observing that "the proposition that [the defendant's] risk of reinfection is negligible"

was "speculative.").

Defendant Long now reports that he is feeling somewhat "better," but that he is currently treating his asthma with a steroid inhaler in addition to a stronger-than-normal albuterol inhaler. He has also stated that even two months after his initial infection he still experiences shortness of breath and difficulty breathing at times. Defendant Long's COVID infection may have damaged his lungs, possibly rendering him even more vulnerable to serious complications from COVID than he was before his November infection. See What Coronavirus Does to the Lungs, Johns Hopkins, https://www.hopkinsmedicine.org/ health/conditions-and-diseases/coronavirus/what-coronavirus-does-to-the-lungs (last accessed January 14, 2021) (discussing possibility of "lasting pulmonary scarring" from COVID). Given the severity of Defendant Long's pulmonary ailments and the apparent scientific uncertainty surrounding the long-term danger of reinfection, the Court finds that Defendant Long has established extraordinary and compelling reasons warranting compassionate release.

Next, the Court must consider whether the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh in favor of compassionate

release in this case.  Defendant Long does have two prior convictions for violent felonies, but these offenses occurred in 2000 and 2006, when Defendant was 17 and 22 respectively.  See d/e 19, p. 8.  Defendant has served more than half of his statutory term of imprisonment and has fewer than 20 months remaining before he becomes eligible for supervised release.  Furthermore, Defendant Long has not been assessed any disciplinary violations while in Bureau of Prisons custody, and he has secured a release plan that the U.S. Probation office considers to be suitable.  See d/e 39; d/e 41  After consideration of the § 3553(a) sentencing factors, the Court finds that Defendant Long is not a danger to others or to the community and that the § 3553(a) factors favor release.

## II. CONCLUSION

For the reasons stated, Defendant Anthony Long's second pro se compassionate release motion (d/e 42) is GRANTED.  The Court hereby reduces Defendant's term of imprisonment to time served plus 72 hours in order to allow Defendant to be tested for COVID-19 and released.  The Court modifies Defendant's conditions of supervised release to require Defendant to remain in home confinement for six months following his release.   Defendant Long

must self-quarantine for a period of 14 days beginning at the time of his release, including while he travels from his BOP facility to his new residence. Defendant shall serve his period of home confinement in the residence described in the United States Probation Office's memorandum on Defendant's release plan (d/e 41). Defendant shall travel to his new residence in a vehicle with three-row seating that allows him to follow the CDC's social distancing guidelines, which include staying at least six feet from others and wearing a face mask and gloves.

ENTER: January 14, 2021

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE